**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG**

**BGD HOLDINGS, INC.**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 1:25-CV-124 (KLEEH)**

**ACCENTURE FEDERAL SERVICES, LLC, COGNOSANTE HOLDINGS, LLC, AND COGNOSANTE, LLC,**

**Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DENYING DEFENDANTS' MOTION TO DISMISS [ECF NO. 4]**

---

Pending before this Court is *Defendants' Motion to Dismiss and Compel Arbitration*, filed December 30, 2025. ECF No. 4. For the reasons stated herein, the Motion to Dismiss is **DENIED WITHOUT prejudice** and the Motion to Compel Arbitration is **GRANTED**.

## I. PROCEDURAL BACKGROUND

Plaintiff BGD Holdings, Inc. ("Plaintiff" or "BGD") filed a Complaint in the Circuit Court of Marion County, West Virginia on October 30, 2025. Compl., ECF No. 1-2. Defendants Accenture Federal Services, LLC ("Accenture"), Cognosante Holdings, LLC ("Cognosante Holdings"), and Cognosante, LLC ("Cognosante"), (collectively "Defendants") removed the case to this Court on December 23, 2025. ECF No. 1. Removal was proper and undisputed by the parties.

Plaintiff alleges four causes of action: Count I of the Complaint alleges constructive fraud on BGD; Count II alleges a breach of duties to a minority member; Count III asserts a claim for a proper and complete accounting; and Count IV asserts a claim for attorney fees based on bad faith and dealing. Compl., ECF No. 1-2.

Defendants filed a Motion to Dismiss and Compel Arbitration on December 30, 2025, [ECF No. 4], pursuant to the Amended and Restated Limited Liability Company Agreement ("the Agreement"). Id. at p. 1. The Agreement, executed between Plaintiff and Defendant Cognosante on March 18, 2022, created RedTail LiDAR Systems, LLC. Id. at p. 1. Defendants contend the Agreement contains a mandatory written arbitration provision which encompasses all of Plaintiff's claims. Id. Plaintiff responded in opposition on January 13, 2026, [ECF No. 6], to which Defendants replied January 20, 2026. ECF No. 7. The Motion to Dismiss and Compel Arbitration is fully briefed and ripe for review.

## II. FACTUAL BACKGROUND

This case arises from the alleged breach of fiduciary duty and improper conduct by Defendants related to the commercialization of "Light Detection and Ranging Technology" or "LiDAR." Compl., ECF No. 1-2 at p. 2, n. 1. All Defendants are Limited Liability Companies. Id. at ¶¶ 2-4. Defendant Cognosante is a wholly-owned subsidiary of Defendant Cognosante Holdings,

which is a wholly-owned subsidiary of Defendant Accenture. Id. Defendant Cognosante is a two-thirds majority member of RedTail Lidar Systems, LLC ("RedTail") and Plaintiff is a one-third minority member of RedTail. Id. at ¶ 5. Defendants collectively are incorporated in Delaware with their principal place of business in Illinois. ECF 1 at p. 1 ¶¶ 9-17. Plaintiff is a West Virginia Corporation. Id. at p. 1 ¶ 8.

Prior to the creation of RedTail, 4D Tech Solutions worked to commercialize LiDAR products created by the U.S. Army Research Laboratory. ECF No. 1-2 at ¶ 8. 4D Tech Solutions was overseen by shareholder Bradley DeRoos, who is the sole member of Plaintiff BGD. Id. at ¶¶ 8, 11. In March 2022, Defendant Cognosante acquired 4D Tech Solutions, assigning the company's rights, title, and interest in LiDAR technology in RedTail, which was created as part of the acquisition. Id. at ¶ 9.

On March 18, 2022, Plaintiff and Defendant Cognosante entered into the Agreement, which restated and superseded the terms and agreements of the Initial LLC Agreement which had created RedTail. ECF No. 4 at p. 21, Ex. 1. The Agreement was signed by Bradley DeRoos, on behalf of the Plaintiff, and Michele Kang, former CEO of Defendant Cognosante. Id. at pp. 57-58, Ex. 1. The Agreement contains, in pertinent part, an arbitration clause, which reads:

> Any Action arising out of, in connection with, or relating to this Agreement or any breach or alleged breach thereof shall be determined and

> settled by confidential arbitration in Washington, D.C., pursuant to the Commercial Arbitration Rules then in effect of the American Arbitration Association. Any award shall be final, binding and conclusive upon the Parties, and a judgment rendered thereon may be entered in any court having jurisdiction thereof.

ECF No. 4-2 at p. 35 § 9.2. An "Action" as defined in the Agreement is as follows:

> any action, arbitration, audit, claim, charge, complaint, controversy, demand, dispute, examination, hearing, investigation, litigation, mediation, petition, review, suit or other proceeding, whether civil, criminal, judicial, administrative, investigative or otherwise, in law or in equity.

Id. at p. 5 § 1.1.

Plaintiff alleges that despite Defendant Cognosante's representation it "would make every effort to commercialize the LiDAR technology" at the time of acquisition, Defendant failed to do so. Compl., ECF No. 1-2 at p. 5 ¶¶ 10, 12. Specifically, Defendant Cognosante failed to "observe company formalities for conducting business, failed to grow, develop, and market the LiDAR technology, failed to hold member meetings, [and] failed to provide financial reports." Id. In May 2024, Defendant Cognosante Holdings, which owns Defendant Cognosante, was acquired by Defendant Accenture. Id. Plaintiff alleges Defendant Accenture failed to market LiDAR technology in the same deficient manner as Defendant Cognosante. Id. at ¶¶ 14-16. Plaintiff further alleges

Defendant Accenture neglected to follow up on a written offer for the purchase of LiDAR technology, costing Plaintiff "millions of dollars," wrongfully "swept" over $200,000 from RedTail's bank account without proper warning, and misstated the company's inventory value. Id. at ¶ 17-21. These claims largely make up Plaintiff's October 30, 2025, Complaint.

On December 30, 2025, Defendants moved to dismiss for lack of subject matter jurisdiction and compel arbitration. ECF No. 4. Defendants maintain each of Plaintiff's claims "arise from, are connected with, and relate to" the Agreement, and are fully encompassed by the arbitration clause, requiring mandatory arbitration before the American Arbitration Association ("AAA") in Washington, D.C.. ECF No. 4-1 at 3–4. Moreover, Defendants assert the Court's limited role in this matter is determining whether there is a valid agreement to arbitrate between the parties pursuant to the Federal Arbitration Act, which governs here. Id. at 5. Specifically, Defendants maintain "[u]nder the FAA, courts must direct the parties to proceed to arbitration on issues as to which an arbitration agreement exists, and courts are afforded no discretion on this issue." See 9 U.S.C. §§ 3- 4; Dean Witter Reynolds, Inc., 470 U.S. 213, 217-218. ECF No. 4-1 at 6.

Plaintiff rejects Defendants assertion that their claims fall squarely within the arbitration provision provided in the Agreement and therefore, "should not be compelled to arbitrate

this matter at this time." ECF No. 6 at 7-8. Specifically, Plaintiff maintains its allegations, causes of action brought, and alleged duties breached by Defendants "all exist independently of the Amended and Restated Limited Liability Company Agreement of RedTail LiDAR Systems, LLC[,]" and are therefore not subject to the arbitration clause. Id. at 1. In the event this Court determines one or all of Plaintiff's claims are subject to arbitration, Plaintiff maintains dismissal of this matter would be improper following Spizzirri, and staying the matter would be the correct course of action. Id. at 8-9.

Defendants reply by reiterating any fiduciary obligations owed to Plaintiff are set forth in the Agreement and the arbitration provision in the Agreement is expansive and unambiguous. ECF No. 7.

## III. LEGAL STANDARD

### A. Federal Jurisdiction

A party may remove to federal court any state "civil action where the matter in controversy exceeds the sum or value of $75,000 ... and is between citizens of different States." 28 U.S.C. §§ 1332(a), 1441(a). When an action is removed from state court, a federal district court must determine whether it has original jurisdiction over the plaintiff's claims. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). "Federal courts are courts of limited

jurisdiction. They possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." Id.

Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331 and (2) those involving diversity of citizenship under 28 U.S.C. § 1332. When a party seeks removal based upon diversity of citizenship, that party bears the burden of establishing "the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states." 28 U.S.C. § 1332. Freeport Gas Coal Tr. v. Harrison Cnty. Coal Res., Inc., 662 F. Supp. 3d 594, 599 (N.D.W. Va. 2023)

**B. Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows the Court to dismiss an action for lack of jurisdiction over the subject matter. A plaintiff bears "the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss pursuant to Rule 12(b)(1), a court should "regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. (internal quotation marks omitted). A court should grant the motion "only if the material jurisdictional facts are

not in dispute and the moving party is entitled to prevail as a matter of law." Id. (internal quotation marks omitted). When a defendant asserts multiple defenses, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999).

### C. **Federal Arbitration Act (U.S.C. §§ 2,3)**

The Federal Arbitration Act ("FAA") outlines the "procedures for enforcing arbitration agreements in federal court." Smith v. Spizzirri, 601 U.S. 472, 473 (2024). Section 2 of the FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

9 U.S.C.A. § 2.

The Fourth Circuit holds a litigant can compel arbitration under the FAA if he can demonstrate: '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3)

the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" Adkins v. Labor Ready. Inc., 303 F.3d 496, 500-501 (4th Cir. 2002). Additionally, section 3 of the FAA sets forth:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Section 4 further provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to

> arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

### D. Delaware State Contract Law [1]

"Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts." Lawhun v. CMH Homes, Inc., No. 1:22-CV-112, 2023 WL 5280909, at *5 (N.D. W.Va. Aug. 16, 2023) (internal citation omitted); see In re Cotton Yarn Antitrust Litig., 505 F.3d 274 (4th Cir. 2007)("State contract law govern the question of whether the parties have agreed to arbitrate...."). Thus, the issue of the arbitration clause's scope is governed by Delaware state law.

Delaware has a strong public policy in favor of arbitration, and courts will generally compel arbitration when there are "doubts on the issue." Elf Atochem North America, Inc. v. Jaffari, 727 A.2d 286, 295. See also Parfi Holding AB v. Mirror Image Internet, Inc., 817 A.2d 149, 155-56 (Del. 2002) ("When parties to an agreement decide that they will submit their claims to arbitration, Delaware courts . . . ordinarily resolve any doubt as to arbitrability in favor of arbitration.") When determining the arbitrability of a claim, the court must (1) "determine whether

[1] The Agreement contains a governing law provision, specifying that Delaware state law will be applied to issues of "construction, validity, and interpretation" of the agreement. ECF No. 4 at p. 53, Ex. 1.

the arbitration clause is broad or narrow in scope" and (2) "apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration." Parfi, 817 A.2d at 155.

## IV. DISCUSSION

Defendants set forth the arbitration clause contained in the Agreement is binding on all of Plaintiff's claims and is mandatory under the FAA. Def's Motion, ECF No. 4 at p. 1. Plaintiff argues the arbitration clause is not binding, because the claims asserted are not grounded in the contract; rather, they are related to traditional duties between business partners under Delaware state law. ECF No. 6 at pp. 2-3. In addition, Plaintiff contends the case should not be dismissed, as United States Supreme Court precedent requires litigation sent to arbitration be stayed rather than dismissed. Id. at p. 8.[2] Furthermore, Plaintiff asserts only Plaintiff and Defendant Cognosante were parties to the Agreement, meaning claims against Defendants Accenture and Cognosante Holdings are not bound by the arbitration clause. For the reasons discussed below, the Court **GRANTS IN PART** the subject Motion as it pertains to Defendants' Motion to Compel Arbitration relating to

[2] Smith v. Spizzirri, 601 U.S. 472, 474 ("The question here is whether § 3 [of the FAA] permits a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration. It does not.")

claims against Defendant Cognosante and **DENIES without prejudice** the Defendants' Motion to Dismiss. ECF No. 4.

**A. Defendants' Motion to Dismiss is DENIED without prejudice and litigation is stayed.**

In Smith v. Spizzirri, 601 U.S. 472, the Supreme Court ruled district courts are not permitted to dismiss litigation in favor of arbitration in the absence of a countervailing jurisdictional issue. Further, the FAA "overrides any discretion a district court might otherwise have had to dismiss a suit when the parties have agreed to arbitration," so long as one party requests a stay. Smith v. Spizzirri, 601 U.S. 472, 477 (2024). The fact that all claims are subject to arbitration is not dispositive on a motion to dismiss. Id. at 466. Rather, the FAA requires lawsuits pending arbitration be stayed, per plain language of the statute. Id. See Maine Community Health Options v. United States, 590 U.S. 296, 310 (2020) ("'Unlike the word "may," which implies discretion, the word "shall" usually connotes a requirement.'") Moreover, the FAA instructs courts to take on a "supervisory role," which can only occur if the case is still present on that court's active docket during arbitration. Id. at 478. Courts may dismiss an action being sent to arbitration only if there is a separate reason to dismiss, such as a lack of jurisdiction. Id. at n. 2. A valid arbitration clause does not deprive the Court of subject matter jurisdiction. Spizzirri, 601 U.S. at 474 ("The question here is whether § 3 [of

the FAA] permits a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration. It does not.")

This Court must possess either diversity jurisdiction or federal question jurisdiction for subject matter jurisdiction to exist. Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1).

Here, the litigation must be stayed rather than dismissed because the Court has subject matter jurisdiction through diversity and the Plaintiff has requested a stay. Plaintiff's Response, ECF No. 6 at p. 8-9. Both parties concede that Plaintiff BGD Holdings is a West Virginia corporation, with Defendants possessing citizenship as limited liability companies in Delaware and Illinois. Compl., ECF No. 1-2 at ¶¶ 1-4; ECF No. 4 at p. 8. Furthermore, the amount in controversy is satisfied because Plaintiff claims that it was deprived of opportunities worth "millions of dollars" by the Defendants and specifically of $200,000 by Defendant Accenture. Compl., ECF No. 1-2 at ¶¶ 17-20. Based on the validity of the arbitration clause, which will be addressed below, and the existence of diversity jurisdiction, this Court **DENIES WITHOUT prejudice** Defendant's Motion to Dismiss and **STAYS** the litigation, in accordance with Spizzirri.

**B. The arbitration clause in the Agreement is applicable because it meets both required prongs under Delaware State Law.**

State contract law governs whether parties have agreed to arbitrate. See In re Cotton Yarn Antitrust Litig., 505 F.3d 274 (4th Cir. 2007). Under Delaware law, to determine the arbitrability of a claim, the court must (1) "determine whether the arbitration clause is broad or narrow in scope" and (2) "apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration. Parfi, 817 A.2d at 155. Arbitration clauses that use language like "any dispute, controversy, or claim arising out of or in connection with this agreement," are considered broad. Id. See generally Majkowski v. American Imaging Management Services, LLC, 913 A.2d 572 (Del. Ch. 2006) (finding an arbitration clause with the language "arise out of" and "relate to" to be broad); Douzinas v. American Bureau of Shipping, Inc., 888 A.2d 1146 (Del. Ch. 2006) (referring to "arising under" and "related to" language in an arbitration clause as broad). If an arbitration clause is broad, courts will consider the parties to have an "intent to arbitrate all possible claims that touch on the rights set forth in their contract." Parfi, 817 A.2d at 155.

Following Delaware case law, the present arbitration clause is broad:

> Any Action arising out of, in connection with, or relating to this Agreement or any breach or alleged breach thereof shall be determined and settled by confidential arbitration in Washington, D.C., pursuant to the Commercial Arbitration Rules then in effect of the American Arbitration Association. Any award shall be final, binding and conclusive upon the Parties, and a judgment rendered thereon may be entered in any court having jurisdiction thereof.

ECF No. 4 at p. 52, Ex. 1 (emphasis added). See generally Majkowski v. American Imaging Management Services, LLC, 913 A.2d 572 (Del. Ch. 2006). This language is broad under the standard and thus applies to "all possible claims that touch on the rights set forth in the contract." Here, Plaintiff's claims include constructive fraud, breach of duties, a proper and complete accounting, and attorney fees based on bad faith and dealing. Under the contract an "action" within the arbitration clause is defined as:

> any action, arbitration, audit, claim, charge, complaint, controversy, demand, dispute, examination, hearing, investigation, litigation, mediation, petition, review, suit or other proceeding, whether civil, criminal, judicial, administrative, investigative or otherwise, in law or in equity.

ECF No. 4, p. 22, ex. 1.

Because the scope of the arbitration clause is broad following Delaware law and Delaware courts have interpreted an "intent to arbitrate all possible claims that touch on the rights set forth in their contract[,]" and the meaning of "action" within the Agreement is wide reaching, each of Plaintiffs claims touch on the

rights included in the contract. Parfi, 817 A.2d at 155. Employing the Adkins factors below, the Court further maintains arbitration is mandatory and sets forth in detail that all Plaintiff's claims touch on the rights included in the contract and therefore fall within the broad scope of contractual provisions that require arbitration. Moreover, neither party has contested the validity of the contract or argued the arbitration clause is unconscionable. Therefore, the arbitration clause is valid.

### C. Because all Adkins factors for mandatory arbitration under the FAA have been met for each claim, the Motion to Compel Arbitration is GRANTED.

The Defendants' Motion to Compel Arbitration is **GRANTED** because all four factors required to compel arbitration under Adkins are met.

Section 2 of the FAA sets forth:

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . or an agreement in writing to submit to arbitration an existing controversy arising . . . out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

9 U.S.C. § 2. The "party seeking to enforce the arbitration agreement, bears the initial burden" of demonstrating to the court that the parties entered into an enforceable arbitration

agreement. Little v. Cellco P'ship, 304 F. Supp. 3d 508, 510 (S.D.W. Va. 2018). To satisfy this burden, and compel arbitration under Section 2, a litigant must:

> demonstrate: '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'

Adkins v. Labor Ready. Inc., 303 F.3d 496, 500-501 (4th Cir. 2002). The filing of a Complaint evidences a clear dispute between parties, sufficient to satisfy factor one. See Frashuer v. Altice USA, Inc., No. 2:21-CV-17, 2023 WL 195523 *2 (N.D.W. Va. Jan. 17, 2023) (citations omitted) (finding a dispute between parties, as evidenced by Plaintiff's Complaint, satisfies the first Adkins factor). Furthermore, if the two parties are citizens of different states and the contract relates to the exchange of commerce, the third factor will be met. Id. The agreement must merely "affect" interstate commerce in some capacity to meet the standard of relating to commerce. Allied-Bruce Terminiz Cos v. Dobson, 513 U.S. 265, 273-74 (1995). With regard to factor four, where a defendant successfully demonstrates the parties entered into an agreement to arbitrate, "the burden shifts to the plaintiff to show that even though there was some written contract, [they] did

not actually agree to it" for a "reason evincing lack of true agreement." Little, at *10.

The elements regarding each claim are discussed below.

**1. Constructive Fraud and Breach of Duty to Minority Member [Counts I and II]**

All four elements to compel arbitration under Adkins are met regarding Counts I and II. First, a dispute exists between parties, as evidenced by the filing of a Complaint, satisfying factor one. Compl., ECF No. 1-2. Second, both the constructive fraud claim, and breach of duty claim relate to specific provisions of the contract covered by the arbitration agreement, satisfying factor two, as further discussed below. Third, the parties are diverse citizens as established infra, and the Agreement relates to the exchange of commerce, specifically, the agreement governs the commercialization of LiDAR Technology across state lines, affecting interstate commerce in some capacity. Compl., ECF 1-2 at ¶¶ 1-5 and 9-10. Finally, the fourth factor is met because Plaintiff actively opposes arbitration and has failed to arbitrate the parties' disputes prior to initiating this action. See ECF No. 6.

Regarding factor two of Plaintiff's constructive fraud claim, Plaintiff asserts harm to rights which arise from, or are in connection with, or relate to the Agreement. Specifically, Plaintiff alleges Defendants made "false or misleading statements

regarding the amounts, purpose, and benefits of expenses incurred by RedTail," and "false or misleading statement[s] related to the collaterization [sic] of RedTail by the managing member's use of RedTail as their own, solely-owned asset[.]" Compl. at ¶ 28. Plaintiff further stated "[t]his fraud has harmed BGD's rights as a member." Id. at ¶ 29. The Court disagrees with Plaintiff's contention that its claims constitute independent causes of action not encompassed by the arbitration clause. Because this Court has established the scope of the arbitration clause to be broad under Delaware law, the rights asserted by Plaintiff fall within the scope of arbitration. See Ex. A at § 5.3 of the Agreement, governing the duties Plaintiff is owed as a member of RedTail; See also Ex. A at Art. 8. Of the Agreement, detailing Plaintiff's rights as minority member of RedTail to the books and records it alleges it is owed in its Complaint.

Plaintiff further contends its claims do not arise out of the limited liability agreement between the Parties. Regarding factor two of Plaintiff's breach of duty to a minority member, under Delaware state law, limited liability companies ("LLCs") are governed by the Limited Liability Company Act, 6 Del. Code §§ 18-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 (2026) ("LLCA"). Section 18-1101(b) of the LLCA provides the policy of the chapter is "to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements." Del. Code Ann. tit. 6,

§ 18-1101(b). The LLCA intends to "provide members with broad discretion in drafting the Agreement and to furnish default provisions when the members' agreement is silent." Elf Atochem, 727 A.2d at 291 (Del. 1999) (emphasis added). Further, members are permitted to expand, restrict, or eliminate fiduciary duties traditionally owed by members under Delaware corporate law, aside from the implied covenant of good faith and fair dealing. Del. Code Ann. tit. 6, § 18-1101(c). See also Holifield v. XRI Investment Holdings LLC, 304 A.3d 896, 921 (Del. 2023) ("Members of [LLCs] must appreciate that with the benefits of investing in [LLCs] often comes the limitation of looking to the contract as the exclusive source of protective rights.") (internal quotations omitted). Delaware's approach to analyzing an internal affairs litigation issue with an LLC is as follows:

> "The first step . . . is . . . to examine the LLC agreement to determine whether it addresses the issue. If the agreement covers the issue, the agreement controls unless it violates one of the [LLCA]'s mandatory provisions. If the agreement is silent, then the Court must look to the [LLCA] to see if one of its default provisions apply. If neither the agreement nor the [LLCA] addresses the matter, the rules of law and equity shall govern.

Id. (quoting In re Coinmint, LLC, 261 A.3d 867, 900-01 (Del. Ch. 2021)). When a party's duties are listed in the terms of an LLC agreement, and those duties are alleged to have been breached, the claims "arise out of" the agreement. See Elf Atochem, 727 A.2d at

295 (finding breach of fiduciary duty claims arose out of an LLC agreement when the agreement specified the defendant was the chief executive officer of the LLC and the allegations went to his duties as the CEO).

Here, Plaintiff's claims clearly arise out of the LLC Agreement and are bound by the arbitration clause because § 5.3 of the LLC agreement specifically discusses the fiduciary duties held by the officers of RedTail. Specifically, the agreement reads as follows:

> the Officers, in the performance of their duties as such, shall owe the Company and to the Members the same fiduciary duties as are owed under the Laws of the State of Delaware (including its common law) by officers to the stockholders of a corporation incorporated under the Laws of the State of Delaware, and (ii) to the fullest extent permitted by the Law, . . . no Member or Manager or any of their respective Affiliates will have any fiduciary duties or other liability . . . to the Company or its Subsidiaries, or to any other Manager or Member or their respective Affiliates.

ECF No. 4 at p. 36-37,Ex. 1. Plaintiff argues its claims relating to Defendants' alleged breach of duties are not bound by the arbitration clause because Defendants' fiduciary duties exist outside the Agreement. ECF No. 6 at p. 4. This argument is not persuasive to the Court. Although majority members of an LLC do owe minority members certain fiduciary duties under law, Delaware case law is clear that the LLC agreement and the rights it provides control unless it violates a provision of the LLCA or is silent on

an issue. There is no indication or allegations asserted by the parties that the Agreement violates the LLCA in any capacity. Further, the Agreement is not silent regarding fiduciary duties. See ECF No. 4 at p. 36-37, Ex. 1.

Plaintiff seems to argue that the Agreement is silent regarding fiduciary duties, thus implicating the duties provided for under Delaware state law. ECF No. 6 at p. 4-5. However, this is not the case, and the argument fails. See ECF No. 4, p. 36-37, Ex. 1.

The instant case is even more compelling than Elf Atochem, given the subject Agreement contains terms relating directly to fiduciary duties for which the Defendants Cognosante and Accenture are specifically alleged to have broken. See Compl., ECF No. 1-2 at ¶¶ 31-33.

For the reasons stated above, all four elements to compel arbitration under Adkins are met for Counts I and II. Thus, the Court **GRANTS** the Defendant's Motion to Compel Arbitration as to those claims.

**2. Accounting & Bad Faith claims [Counts III and IV]**

Factors one, three, and four are satisfied for the same reasons stated above. Factor two is satisfied as to both the accounting claim and bad faith claim because each relate to specific provisions of the contract covered by the arbitration agreement. Regarding the accounting claim, § 8.2 of the written

Agreement states, "the Board of Managers shall keep or cause to be kept complete and accurate books and records of the company . . . ." ECF No. 4 at p. 49, Ex. 1. The alleged breach of this provision falls within the scope of the arbitration clause. Regarding the bad faith claims, Plaintiff alleges the Defendants have "acted in bad faith in dealing with Plaintiff BGD." Id. Under Delaware Law, limited liability company agreements "may not eliminate the implied contractual covenant of good faith and fair dealing." Del. Code Ann. tit. 6, § 18-1101. Thus, a covenant of good faith and fair dealing exists here. Because the alleged breach of the covenant of good faith relates to the subject Agreement, the claim falls within the arbitration clause.

Plaintiff contends a footnote in the Agreement stating "Note to Seller: Cognosante *expects* any disputes to be resolved confidentially in arbitration, not in open court," indicates the arbitration clause is merely a request. ECF No. 6 at p. 6. This argument fails because all four factors compelling arbitration under Adkins are met. Therefore, Defendant's Motion to Compel Arbitration is **GRANTED** as to Counts III and IV.

**D. All Defendants are bound by the arbitration clause.**

When a nonparty to an arbitration agreement seeks relief under the FAA, the district court must undergo an analysis of whether "the relevant state contract law allows [that nonparty] to enforce the agreement." Rogers v. Tug Hill Operating, LLC, 76 F.4th 279,

287 (4th Cir. 2023) (quoting Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631-32 (2009). Nonsignatory parties to a written agreement may be able to enforce arbitration arising from said agreement under "traditional principles" of state law such as "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." Arthur Anderson, 556 U.S. at 629 (internal quotations and citation omitted). See also Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir. 2000) ("While a contract cannot bind parties to arbitrate disputes they have not agreed to arbitrate, it does not follow . . . that under [the FAA] an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision.") (internal quotations and citation omitted).

**a. Defendant Accenture**

Specifically, the Fourth Circuit has held that "[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." Burlington Ins. Co. v. Trygg-Hansa Ins. Co. AB, 9 Fed. App'x 196, 203-04 (4th Cir. 2001) (quoting J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320–21 (4th Cir.1988)).

Here, the claims against Defendant Cognosante and Accenture are nearly identical in Plaintiff's Complaint. See ECF No. 1-2. Furthermore, Plaintiff essentially conflates the allegations against both Defendant Cognosante and Accenture into one collective allegation. ECF No. 1-2 at ¶ 24.[3] Therefore, claims against Defendant Accenture as the parent company can be compelled to arbitration as well, despite Accenture not being a party to the original agreement.

**b. Defendant Cognosante Holdings**

Since there are no actual claims against Defendant Cognosante Holdings in the Complaint, aside from the fact that Defendant Cognosante is a wholly owned subsidiary, this Court must look to the five traditional common law principles that allow a non-signing party to be bound. See ECF No. 1-2. The only viable option for Defendant Cognosante Holdings is estoppel.

Under Delaware state law, to estop a signatory from avoiding arbitration with a non-signatory, courts apply an "alternative

[3] "Defendant Cognosante and Accenture's oppression includes, but is not limited to: failing to market and commercialize the LiDAR technology; failing to follow corporate formalities and state laws, including duties of care and loyalty; failing to hold timely member meetings; failing to provide proper notice for member meetings; using Redtail as collateral for independent financing; removing cash from RedTail accounts without notice, authority, authorization, or explanation; refusing to recognize Plaintiff's rights as a member of RedTail; refusing to provide information and/or reporting regarding RedTail; self-dealing to the detriment of Plaintiff BGD Holdings, LLC and RedTail; and ignoring or foregoing business opportunities for its own interests." ECF No. 1-2 at ¶ 24.

estoppel theory." NAMA Holdings, LLC v. Related World Market Center, LLC, 922 A.2d 417, n. 35 (Del. Ch. 2007). Courts are much less hesitant to "estop a signatory from avoiding arbitration with a non-signatory, rather than vice versa." Ishimaru v. Fung, No. CIV.A. 929, 2005 WL 2899680 at *18 n. 50 (Del. Ch. Oct. 26, 2005) (citation omitted). Under the alternative estoppel theory, as detailed by the Eleventh Circuit, takes into consideration the "relationship of the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract." If the claims are "intimately founded in and intertwined with the underlying contract obligations," the non-signing party can be compelled to arbitrate. NAMA Holdings, 922 A.2d at n. 35 (quoting Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir. 1993)).

## V. CONCLUSION

For the reasons discussed above, *Defendants' Motion to Dismiss and Compel Arbitration* is **GRANTED** in part as to compelling arbitration for claims against Defendant Cognosante and **DENIED** as to dismissing the action. Instead, the Court **STAYS** the action pending arbitration. Assuming that Defendants Accenture and Cognosante Holdings are found to be bound by the Agreement, claims against them should also be sent to arbitration, pending clarification from the parties.

It is so **ORDERED**

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED:** September 29, 2026

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA